IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

KAYLA ANN CHEEK                                                    PLAINTIFF

V.                                        NO. 10-5193

MICHAEL J. ASTRUE,
Commissioner of the Social Security Administration          DEFENDANT

## MEMORANDUM OPINION

Plaintiff, Kayla Ann Cheek, brings this action pursuant to 42 U.S.C. § 405(g), seeking

judicial review of a decision of the Commissioner of the Social Security Administration

(Commissioner) denying her claims for a period of disability and disability insurance benefits

(DIB) and supplemental security income (SSI) benefits under the provisions of Titles II and XVI

of the Social Security Act (Act).  In this judicial review, the Court must determine whether there

is substantial evidence in the administrative record to support the Commissioner's decision.  See

42 U.S.C. § 405(g).

## I.      Procedural Background:

Plaintiff protectively filed her current applications for DIB and SSI on July 10, 2007,

alleging an inability to work since February 27, 2007, due to spurs in her lower spine, chronic

obstructive pulmonary disease (COPD), tumor in her right shoulder, weakness in both shoulders,

depression, obesity, and a learning disability. (Tr. 168).  An administrative hearing was held on

December 19, 2008, at which Plaintiff appeared with counsel and testified.  (Tr. 18-76).

By written decision dated April 14, 2009, the ALJ found that during the relevant time

period, Plaintiff had an impairment or combination of impairments that were severe - obesity,

-1-

a back disorder, COPD, and a mood disorder.  (Tr. 86).   However, after reviewing all of the

evidence presented, she determined that Plaintiff's impairments did not meet or equal the level

of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart

P, Regulation No. 4.  (Tr. 86).  The ALJ found Plaintiff retained the residual functional capacity

(RFC) to:

> perform less than sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a).
> Primarily as a result of her back disorder, exacerbated by obesity, in addition to
> lifting/carrying 10 pounds occasionally and less than 10 pounds frequently and standing
> and/or walking and sitting for 2 hours and 6 hours out of an 8-hour workday,
> respectively, the claimant is able to only occasionally stoop, crouch, bend, crawl, kneel,
> balance, climb stairs/ramps, and is unable to perform any activities involving climbing
> of ropes/ladders/scaffolds, unprotected heights/dangerous equipment-machines, or any
> work involving extreme vibration, sustained driving (secondary to pain) or, as a result
> of COPD, work involving concentrated exposure to
> dust/fumes/smoke/chemicals/noxious gasses. As a result of her mood disorder, she can
> perform only that work involving non-complex, simple instructions, little judgment, tasks
> which can be learned by rote, having few variables, as well as routine and repetitive
> activities requiring only superficial contact incidental to the work/with the public/co-
> workers and involving supervision which is concrete, direct and specific.  The work
> should also allow for activities which require no more than rudimentary mathematics, but
> can handle money, and reading at the third grade level.

(Tr. 87).  With the help of a vocational expert (VE), the ALJ determined Plaintiff could perform

other work in an unskilled assembly work job.  (Tr. 90-91).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which

denied that request on September 24, 2010.  (Tr. 1-3).  Subsequently, Plaintiff filed this action.

(Doc. 1).  This case is before the undersigned pursuant to the consent of the parties.  (Doc. 5).

Both parties have filed appeal briefs, and the case is now ready for decision.  (Docs. 7, 10).

**II.    Evidence Presented:**

Plaintiff was born in 1966 and went through the eleventh grade of high school.  She did

-2-

not receive a GED, and when she took the pre-GED test, Plaintiff testified that it was reported that she read at the third grade level, with zero comprehension. (Tr. 25-27). The earliest medical record in the file relates to Plaintiff's visit to Washington Regional Medical Center on February 19-22, 2007, when she complained of chest pain. (Tr. 195-197, 199-204). Her need to stop smoking to decrease her risk factors was discussed. (Tr. 233). At that time, she was on no medications, and an x-ray of her chest was unremarkable, she had normal right and left coronary angiogram, no evidence of mitral regurgitation or mitral valve prolapse, and had normal LV (left ventricular) size and function. (Tr. 204, 208). Plaintiff reported that she smoked about two packs of cigarettes per week for approximately thirty years. (Tr. 195). A physical exam showed no abnormalities on admission. (Tr. 196). An EKG showed normal sinus rhythm with no acute ST changes, and all of the lab tests were within normal limits. (Tr. 196).

On August 12, 2007, Plaintiff again presented to Washington Regional Medical Center Emergency Room, complaining of chest pain. (Tr. 214). During this visit, it was reported that Plaintiff smoked 1 ½ packs per day for 27 years and "now smokes 2 packs/weekly." (Tr. 217). X-rays of her chest revealed no acute disease. (Tr. 230).

On September 10, 2007, a Mental Diagnostic Evaluation was performed by Terry L.Efird, Ph.D. (Tr. 250-255). Plaintiff reported to Dr. Efird that she did not want to be around people, that the least little thing set her off, that she stayed in her bedroom most of the time and came out for about three hours per day. (Tr. 250). She reported that her children and husband did not want to be around her, and that she was "depressed and irritable 24/7." (Tr. 250). Her depression reportedly became worse after December 13, 2004, when Plaintiff's mother died in her arms. (Tr. 250). Dr. Efird reported that Plaintiff told him that she was taking her husband's

-3-

pain medication and "muscle relaxors" to sleep, and that she had gained 100 pounds since December 2004. (Tr. 250). Plaintiff denied a history of mental health counseling or medications, and stated that she had financial obstacles to treatment. (Tr. 251). Plaintiff reported that she cooked three meals per day and that she did not know how to read and write. (Tr. 251). Dr. Efird reported Plaintiff as "obese." (Tr. 251). Dr. Efird concluded that Plaintiff presented and endorsed significant symptoms of major depressive disorder. (Tr. 253). He diagnosed her as follows:

| | |
|---|---|
| Axis I: | Major depressive disorder, moderate to severe |
| Axis II: | Deferred |
| Axis V: | 45-55 |

(Tr. 254).

On September 19, 2007, a General Physical Examination was performed by Dr. Tad Michael Morgan, at the request of the Social Security Administration. (Tr. 256-262). Dr. Morgan noted that Plaintiff smoked ½ pack of cigarettes per day, that she had normal range of motion in her spine and extremities, that she was 64" tall and weighed 274 pounds, had no muscle weakness or atrophy, that her gait and coordination were normal, and that all of her limb functions were normal. (Tr. 257-260). He diagnosed Plaintiff as follows:

1. Chronic low back pain - by history
2. Shoulder weakness - by history - ? Etiology
3. Illiterate
4. COPD - Smoker
5. Exogenous obesity

(Tr. 262). Dr. Morgan concluded that Plaintiff had moderate limitation in her ability to walk, stand, lift, and carry. (Tr. 262).

On September 23, 2007, a Mental RFC Assessment was completed by Paula Lynch. (Tr.

-4-

266-269). Dr. Lynch found that Plaintiff was not significantly limited in 11 out of 20 categories, and moderately limited in 9 out of 20 categories. (Tr. 266-267). She found that Plaintiff was able to perform work where interpersonal contact was incidental to work performed, e.g. assembly work; where complexity of tasks was learned and performed by rote, with few variables, and little judgment; and where supervision required was simple, direct and concrete. "(Unskilled)." (Tr. 266-268).

On September 23, 2007, Dr. Lynch also completed a Psychiatric Review Technique form. (Tr. 270-283). Dr. Lynch concluded that Plaintiff had a moderate degree of limitation in her restriction of activities of daily living, difficulties in maintaining social functioning, and maintaining concentration, persistence or pace. (Tr. 280). She also found that Plaintiff had no episodes of decompensation, and that the evidence did not establish the presence of the "C" criteria. (Tr. 281). Dr. Lynch noted that Plaintiff did not have any present or past psychotropic medication and no formal mental health treatment was received or recommended. (Tr. 282).

On September 27, 2007, a Physical RFC Assessment was completed by Alice M. Davidson. (Tr. 287-294). Dr. Davidson concluded that Plaintiff could:

> occasionally lift and/or carry (including upward pulling) 20 pounds; frequently lift and/or carry (including upward pulling) 10 pounds; stand and/or walk (with normal breaks) for a total of about 6 hours in an 8-hour workday; sit (with normal breaks) for a total of about 6 hours in an 8 -hour workday; push and/or pull (including operation of hand and/or foot controls) unlimited, other than as shown for lift and/or carry.

(Tr. 288). Dr. Davidson also concluded that Plaintiff could frequently climb ramps/stairs/ladders/ropes/scaffolds, balance, kneel, and crawl, and could occasionally stoop and crouch. (Tr. 289). No manipulative, visual or communicative limitations were established. (Tr. 290-291). Plaintiff was to avoid fumes, odors, dusts, gases, and poor ventilation. (Tr. 291).

AO72A
(Rev. 8/82)

In an undated Disability Report - Adult, Plaintiff reported that she was 5'2" and weighed 276 pounds.  (Tr. 167).  She reported that she could not read and understand English or write more than her name in English.  (Tr. 167).  In response to the question of how her illnesses, injuries, or conditions limited her ability to work, Plaintiff responded "[M]ost of the time I have to crawl."  She further responded that she was swollen so badly that it hurt to walk; that she could only sit or stand for 5-10 minutes before the pain became terrible; could only walk 50 yards without stopping; and could not lift both arms at chest level.  (Tr., 168).  At the time of reporting, she was not on any medications, but reported that she was taking her husband's pain medicine to cope with the pain.  (Tr. 172, 174).

In another report dated August 20, 2007, Plaintiff reported that she required two or more naps a day, had shoulder pain, back and hip pain, a knot in her right arm, was obese and had swelling.  (Tr. 157).  She reported that she did not have any money to get medication.  (Tr. 158).  Also on August 20, 2007, in a Function Report, Plaintiff reported that if she was not in pain, she would "go out side, I work on my quilt blocks, and when im in pain I try to do household chorse."  (Tr. 159).  She reported that she took care of her husband (he had previous neck surgeries and had two more to go), and a ten year old daughter, and fed her dog.  (Tr. 159).  She reported that she could not walk, sit, use her arms, bathe, dress, cook, or clean like she used to, and could not take long trips.  (Tr. 159).  She said that her condition affected her ability to dress sometimes - that her children had to help her with dressing, bathing, caring for her hair, shaving, and using the toilet.  (Tr. 159).  She reported that she prepared her own meals daily and drives.  (Tr. 161-162).  She said she shopped in stores for groceries, sewed and did woodworking.  (Tr. 163).  She reported that her depression caused her to have problems getting along with family,

-6-

friends, and neighbors, and that she did not leave the house very much. (Tr. 164).

In an undated Disability Report - Appeal, Plaintiff reported that her lower back pain had gotten worse, therefore worsening her physical limitations. (Tr. 179). She reported that her daughter helped her shave her legs, clean, take out trash, and that she could not do anything that required lifting over 10 pounds. (Tr. 181).

In another undated Disability Report - Appeal, Plaintiff reported going to the Northwest Arkansas Free Health Center, and taking Cyclobenzaprine for back and muscle pain, Fluoxetine for depression; and HCTZ for fluid retention. (Tr. 189). She reported having a lot of trouble getting out of bed. (Tr. 190).

At the hearing held on December 19, 2008, Plaintiff testified that the free health clinic was treating her for depression, lower back pain and swelling on top of her feet. (Tr. 50). She stated that she was able to sit for about 5 to 10 minutes before she had to adjust her weight. (Tr. 52). She stated that on an average day, she stayed in bed. (Tr. 55). She testified that she was still smoking about a half a pack - that she could go through a pack of cigarettes in four days - and that she had previously been up to three packs a day. (Tr. 60-61). She stated that she had not discussed any exercises with her doctor or things she could do that might help her pain. (Tr. 62). She testified that she very seldom did any cooking, that her eleven year old loaded and unloaded the dishwasher, and that her husband did the laundry, while she folded, sorted and mended. (Tr. 69-70).

## III.   Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir.

-7-

2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing her claim; (2) whether the claimant had a severe physical and/or

-8-

mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled

an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing

past relevant work; and (5) whether the claimant was able to perform other work in the national

economy given her age, education, and experience.  See 20 C.F.R. §416.920.  Only if the final

stage is reached does the fact finder consider the Plaintiff's age, education, and work experience

in light of her residual functional capacity (RFC).  See McCoy v. Schwieker, 683 F.2d 1138,

1141-42 (8th Cir. 1982);  20 C.F.R. §416.920.

**IV.  Discussion**:

      **A.**      **Subjective Complaints and Credibility Analysis:**

The ALJ was required to consider all the evidence relating to Plaintiff's subjective

complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily

activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating

factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional

restrictions.  See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).  While an ALJ may not

discount a claimant's subjective complaints solely because the medical evidence fails to support

them, an ALJ may discount those complaints where inconsistencies appear in the record as a

whole.  Id.  As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility

is primarily a matter for the ALJ to decide."  Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir.

2003).

After reviewing the administrative record, it is clear that the ALJ properly evaluated

Plaintiff's subjective complaints and addressed all of Plaintiff's allegations of pain.  The ALJ

stated that after considering the evidence of record, Plaintiff's statements concerning the

AO72A
(Rev. 8/82)

intensity, persistence and limiting effects of the symptoms were not credible to the extent they

were inconsistent with the RFC assessment.  (Tr. 88).  The ALJ further concluded:

> While indicating no particular medications other than routine and effective controlling medication for blood pressure and perhaps a muscle relaxer and a mild antidepressant, neither did the claimant indicate any significant side effects from any such medications. Despite her contentions, the testimony and other subjective statements of record nevertheless show the claimant as the primary caregiver for a young child in her home. In addition to being reliable enough to care for said child - the claimant drives and fixes meals - and demonstrating that she is able to do so on a consistent basis, the claimant also indicated that she can maintain attention sufficiently so as to shop (up to 3 hours at a time) and otherwise follow simple instructions so as to perform such activities as sewing on a regular basis.  Combined with the fact that the objective evidence of record is not descriptive of what one would reasonably expect given the complaints of disabling symptoms and limitations described by the claimant, the undersigned necessarily finds the record as a whole - particularly in light of opinion evidence of record - lacking, in terms of showing the existence of disabling severity impairments on the part of the claimant.

(Tr. 88-89).

As referenced by the ALJ, the record, including the opinion evidence, does not support

Plaintiff's claim of disability.  Although she testified at the 2008 hearing that she stayed in bed

all but three hours a day, she also testified that she quit work when her husband had neck surgery

on April 5, 2007, in order to take care of him.   She testified that she was still smoking, and went

through a pack of cigarettes in four days.  She stated that she had not discussed any exercises

with her doctor or things that she could do that might help her pain.  She testified that she did

the shopping, sewed, and scrubbed walls on a good day.  It appears from the record that Plaintiff

did not take any prescription medication other than her husband's, until she began going to a free

clinic, when she then began taking Fluoxetine for depression and Amitriptyline for relaxation.

There is nothing in the record indicating the medication was not effective.

Plaintiff had very little medical treatment for her conditions.  Although she indicated that

-10-

she could not afford treatment or medications, she nevertheless continued to smoke cigarettes, contrary to the advice of physicians, even after she had been diagnosed with COPD.  There is no evidence to suggest that Plaintiff chose to forego smoking two packs of cigarettes per week to help finance medical treatment.  Nor is there any evidence in the record indicating Plaintiff was denied treatment due to a lack of finances.  See Riggins v. Apfel, 177 F.3d 689, 693 (8th Cir. 1999).  "A claimant's allegations of disabling pain may be discredited by evidence that the claimant has received minimal medical treatment and/or has taken only occasional pain medications."  Singh v. Apfel, 222 F.3d 448, 453 (8th Cir. 2000).  "A failure to follow a recommended course of treatment also weighs against a claimant's credibility." Guilliams v. Barnhart, 393 F.3d 798, 802 (8th Cir. 2005).

Furthermore, Dr. Tad Michael Morgan, who conducted the General Physical Examination, found that Plaintiff had:  normal range of motion in her spine and extremities;  no muscle weakness or atrophy;  normal gait and coordination;  and normal limb functions.  In her Physical RFC Assessment, Dr. Alice Davidson found that Plaintiff would be able to occasionally lift and/or carry (including upward pulling) 20 pounds;  frequently lift and/or carry (including upward pulling) 10 pounds;  stand and/or walk (with normal breaks) for a total of about 6 hours in an 8-hour workday;  sit (with normal breaks) for a total of about 6 hours in an 8 -hour workday; push and/or pull (including operation of hand and/or foot controls) unlimited, other than as shown for lift and/or carry.  She also found that Plaintiff could frequently climb ramps, stairs, ladders, ropes, scaffolds, balance, kneel, and crawl and occasionally stoop and crouch.  She found that no manipulative, visual or communicative limitations were established, and that Plaintiff should avoid fumes, odors, dusts, gases, and poor ventilation.

-11-

The lack of objective medical evidence contradicted Plaintiff's claims of disabling pain. See Smith v. Shalala, 987 F.2d 1371, 1374 (8th Cir.1993) (ALJ can discount claimant's complaints of pain when medical evidence failed to establish significant back problem). Moreover, the ALJ was entitled to discount Plaintiff's complaints based on her failure to pursue regular medical treatment. See Benskin v. Bowen, 830 F.2d 878, 884 (8th Cir. 1987) (failure to seek regular treatment or obtain pain medication inconsistent with complaints of disabling pain).

Neither the medical reports or the reports concerning her daily activities support Plaintiff's contention of total disability beginning on February 27, 2007. Accordingly, the Court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible.

### B.    RFC Assessment:

RFC is the most a person can do despite that person['s] limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those

AO72A
(Rev. 8/82)

limitations affect his RFC." Id.

In the present case, the ALJ concluded that Plaintiff would be able to perform less than sedentary work.  As noted by the ALJ, other than the emergency room records dated February and August of 2007, when Plaintiff complained of chest pains, the only objective medical evidence upon which Plaintiff bases her claims of disability is that of consultative physical and psychological examinations of September 2007.

The ALJ noted that during the hearing, Plaintiff's representative indicated that he would produce medical evidence from a free clinic for the years 2007 and 2008.  However, such records were not submitted, and both consultative examiners found Plaintiff's conditions to be no more severe than as indicated.  The limitations found by the consultative examiners were accounted for in the RFC assessment.  The Court agrees with the ALJ's finding that aside from some acute situational stressors (such as her mother passing in December 2004), "there is no intervening and *substantiated* objective medical evidence indicating any worsening of her condition since the time she worked successfully, but for the indicated and moderate limitations of her physical and mental abilities as set out by both consultative examiners," which the ALJ accommodated in the RFC assessment.

Based on the entire evidence of record, the Court finds substantial evidence supports the ALJ's RFC findings.

## C.    Hypothetical Proposed to Vocational Expert:

In his first hypothetical to the VE, the ALJ stated:

Let's assume the claimant has demonstrated an ability to perform work at the sedentary level as that term is understood under the Dictionary of Occupational Titles.  There should be no sustained driving.  No climbing of scaffolds, ladders or ropes.  No work at unprotected heights or dangerous equipment or machinery, I'll define that as life

-13-

threatening, inherently dangerous to cause grievous bodily injury.  She needs to avoid the extremes of vibration.  Avoid concentrated dust, fumes, smoke, chemicals, obnoxious gases and only engage in climbing ramps, stairs, stoop, bend crouch, crawl, kneel and balance on an occasional basis.  Just dealing with the
sedentary level, even a full range of sedentary, could she have returned to any of her past relevant work?
A.  No, Judge

(Tr. 72-73).  The ALJ added to the hypothetical that the work should be noncomplex, with simple instructions and little judgment, work of a routine repetitive type that can be learned by rote having few variables, with no more than superficial contact incidental to work with the public and coworkers and supervision, which is direct, concrete and specific.  (Tr. 73).  He also added that Plaintiff read at a third grade level, could handle money, but that her math skills were rudimentary.  He then asked the VE what work the hypothetical individual would be able to perform, to which the VE stated that there was work available in assembly - circuit board assembly.  (Tr. 73).

After thoroughly reviewing the hearing transcript along with the entire evidence of record, the Court finds that the hypothetical the ALJ proposed to the VE fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. See Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005).

**V.  Conclusion:**

Based on the foregoing, the Court affirms the ALJ's decision and Plaintiff's case is dismissed with prejudice.

IT IS SO ORDERED this 13th day of October, 2011.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

-14-